Wm. Werner, et al. v. City of Galveston et al.

No. 2551.

1.  **Control of Public Schools by City.**—While it is settled that the Legislature can not delegate its authority to make laws by submitting the question of their enactment to a popular vote, it does not follow that the Legislature has no authority to confer a power upon a municipal corporation, and to authorize its acceptance or rejection by the municipality according to the will of the voters as expressed by the ballot box.

2.  **Same—Statute Construed.**—The Act of April 3d, 1879, authorizing cities and towns to take control of the public schools within their limits by a majority vote of their qualified voters, is not unconstitutional.

3.  **Case Followed.**—Graham v. City of Greenville, 67 Texas, 62, followed.

4.  **Statute Construed.**—The said Act of April 3d, 1879, applies as well to cities of ten thousand inhabitants and over as to others.

5.  **Same—Amendment of Statute.**—The said act adds an additional authority to cities and towns.  It is not obnoxious to section 36 of article III of the Constitution, prescribing "no law shall be revived or amended by reference to its title, but in such case the act revived or section or sections amended shall be re-enacted and published at length."

6.  **School Tax—Title of Act of March 26, 1881.**—The Act of March 26, 1881, entitled "An Act to amend chapters 5 and 11 of Title 17 of the Revised Civil Statutes of the State, relating to charters of cities and towns and villages, so as to authorize the levy of a tax for the support of public free schools under certain circumstances," is not obnoxious to the objection that its subject is not embraced in its title so far as it empowered the cities, etc., to impose a school tax by an election for that purpose.  Title 17 of Revised Statutes, while relating mainly to towns which had been and which were to be incorporated under the general laws, included provisions relating to cities of ten thousand inhabitants.

7.  **Statute Construed.**—The Act of March 26, 1881, is held to confer the right to impose a city public school tax upon a two-thirds majority of the electors voting at an election held according to law.

8.  **Cases Followed.**—Fort Worth v. Davis, 57 Texas, 225, and Dwyer v. Hackworth, Ib., 245, followed.

9.  **Declaration of Result of Election.**—The city council having canvassed the vote and declared the result of an election to impose a special school tax, its action is conclusive against a collateral attack.

10.  **Special School Tax—Additional.**—The vote in favor of a special school tax confers the power to levy that so voted additional to the rate of taxation had by the city before such vote.

ON REHEARING.

11.  **Constitutional Law.**—The enforcement of such school tax regularly imposed is not obnoxious to the fourteenth amendment of the Constitution of the United States, that "no State shall deprive any person of * * * property without due process of law."

12.  **Due Process of Law.**—Taking property under the taxing power is due process of law.

Appeal from Galveston.  Tried below before Hon. W. H. Stewart. The opinion states the case.

*L. E. Trezevant,* for appellant.—1.  The subject embraced in the Act

of April 3, 1879, under which the election was held June 13, 1881, to determine whether the city of Galveston should or should not assume control of the public free schools within its limits, is a subject not contained nor expressed in the title of the act, and said act is void under section 35 of article 3 of the Constitution.

2. The constituting any city or town a separate and independent school district being enjoined upon the Legislature as a legislative function, the Act of April 3, 1879, above mentioned, is unconstitutional, in this, that it is not an act of legislation constituting any city or town a separate and independent school district, but is an abdication of a legislative function and a delegation of legislative power to the electors of any city or town to determine whether such city or town may be or may not be constituted a separate and independent school district, and to determine whether the public free schools shall be under the control of the board of aldermen of such city or town or under the control of a board of trustees.

3. The city of Galveston being a city of more than ten thousand inhabitants, can be made a separate and independent school district in conformity with the Constitution in no other way than by a special act amendatory of its charter.

4. The city of Galveston being incorporated under a special law, and not to be constituted a separate and independent school district by other than a special law, the Act of April 3, 1879, is inapplicable to the city of Galveston, and is not authority for its assuming control of the public free schools within its limits, or, if applicable, said act, so far as it affects said city, is unconstitutional, in this, that it amends and changes the charter of said city by imposing upon the mayor thereof duties and confers upon him powers not imposed and not conferred upon him by said charter, and otherwise amends said charter without re-enacting and publishing such amendment at length, in conformity with sec. 36, art. 3, of the Constitution.

Under second and third propositions. Act of April 3, 1879, Gen. Laws 16th Leg., p. 76; State v. Swisher, 17 Texas, 441; Willis v. Owen, 43 Texas, 41; Cooley's Const. Lim., 139; Roos v. State, 6 Minn., 291; Maize v. State, 4 Ind, 342; Meshmeirer v. State, 11 Ind., 483; Opinion of Douglas, J., in People v. Collins, 3 Mich., 413; Ex Parte Wall, 48 Cal., 279; Rice v. Foster, 4 How., 479; State v. Copeland, 3 R. I., 33; Gubrick v. State, 5 Iowa, 491; State v. Weir, 33 Iowa, 134; Berto v. Himrod, 8 N. Y., 483; Parker v. Com., 6 Barr, 507; State v. Field, 17 Mo., 529. See Act of March 15, 1875, Gen. Laws 14th Leg., p. 161.

Under fourth proposition. Const., art. 3, secs. 35 and 36; State v. Wright, 12 Pac. R., 708.

5. The Act of March 26, 1881, under which the election was held September 6, 1881, to determine whether the city of Galveston should or

should not have power to annually levy and collect a school tax, and is entitled "An Act to amend chapters 5 and 11 of title 17 of the Revised Civil Statutes of the State, relating to charters of cities and towns and towns and villages, so as to authorize the levy of a tax for the support of public free schools under certain circumstances," and is known as article 425*a* of the Revised Statutes, is unconstitutional, in so far as it provides that any city or town not incorporated under the provisions of said title 17 shall have power to annually levy and collect a school tax, where such city or town is a separate and independent school district, because said provision embraces a subject not expressed in the title of said act, to-wit, the authorization to cities not incorporated under said act to levy a school tax, and said provision of said act is void under section 35, article 3, of the Constitution.

6.    The constitutional classification of cities into cities and towns having a population of ten thousand inhabitants or less and cities having a population of more than ten thousand inhabitants, takes the latter class out of the purview of the general law incorporating the former class.

7.    The Act of March 26, 1881, above mentioned, is unconstitutional, in this, that it provides that the city or town council shall have power to levy and collect said school tax if two-thirds of the tax payers voting at an election to be held for the purpose shall vote for said tax, and not if two-thirds of the tax payers of such city or town shall vote for said tax, and said act is in conflict with section 10 of article 11 of the Constitution.

8.    The common law rule applicable to corporations aggregate and to the election of officers, is that a majority of legal voters who choose to vote determines the election, and this majority vote is binding upon those of the constituent body who do not vote.    There being no mode of procedure by which the elector could be compelled to vote, this rule originated in necessity and is inapplicable to the case of a proposition submitted to be adopted or rejected by a prescribed definite number of those entitled to vote.

9.    Where the Constitution requires a majority of two-thirds of the qualified electors of a city or town to vote for a proposition before the thing contingent upon the vote may be done, the proposition fails—the contingency has not arisen unless and until such prescribed majority is given and is affirmatively shown to have been given.

10.    The returns of the election having shown affirmatively that the majority given was two-thirds of the votes cast, and the burden of proof being upon appellee to show that the majority in favor of the proposition was two-thirds of the qualified electors of the city, appellant's allegations that there were then 1750 tax paying voters in said city were sufficient in law to entitle appellant to offer proof of said allegation, and appellant ought to have been permitted to introduce such proof.

11.    In the face of the statute in question, and in face of the fact (of

which this court takes judicial cognizance) that appellee had, September 6, 1881, more than 30,000 inhabitants, there can not be any presumption that the number of votes then cast in favor of the proposition, to wit, 560 votes, were two-thirds of the qualified voters of the city of Galveston.

12.    The ballot is not the test of the number of the electors of a constituent body, and that those not voting acquiesce in what the majority do, where the vote of a given number of the entire body is made the contingency upon which the thing proposed may be done or may not be done.

Under first and fifth propositions.    Act of April 3, 1879, Gen. Laws 16th Leg., chap. 67, p. 76; Act of March 26, 1881, Gen. Laws 17th Leg., p. 63; Cannon v. Hemphill, 7 Texas, 207; San Antonio v. Gould, 34 Texas, 49; Giddings v. San Antonio, 47 Texas, 548; Peck v. San Antonio, 51 Texas, 490; State v. Lancaster Co., 6 Neb., 474; Igoe v. State, 14 Ind., 239; State v. Bowers, 14 Ind., 195; Grubbs v. State, 24 Ind., 295; Rogers v. The Manf. Imp. Co., 1 Cent. R., 144 (Pa.); State v. Hallock, 12 Pac. R., 832; Skinner v. Wilhelm, 30 N. W. R., 311; People v. Father Matthew Society, 41 Mich., 67; Leach v. People, 10 West. R., 617; Rudge v. Township of Union, N. J. (L), 509; *In re* Good, St. Louis Ct. App., 4 Cent. L. G., 176; State v. Lafayette Co., 41 Mo., 39; Walker v. State, 49 Ala., 329; Deborah Church v. Detroit, 31 N. W. R., 447; Losch v. St. Charles, 32 N. W. R., 816; Wilcox v. Paddock, 8 West. R., 109; Lane v. State, 8 Cent. R., 639; Dorsey's Appeal, 72 Penn. St., 192; Matter of Paul, 94 N. Y., 497; Jones v. Thompson, 12 Bush, 394; Article by U. M. Rose in 17 Am. L. Rev., 495.

Under sixth proposition.    Revised Statutes, art. 341; Ex Parte Wilson, 14 Ct. App., 592; Gould v. City of Paris, 68 Texas, 511; City of Fort Worth v. Crawford, 64 Texas, 202; Town of Deborah v. Bullis, 25 Iowa, 12; Burke v. Jeffries, 20 Iowa, 145. ·

Under seventh, eighth, ninth, tenth, eleventh, and twelfth propositions.    Hawkins v. Carroll Co., 50 Miss., 735; Cocke v. Gooch, 5 Heisk., 308; State v. Co. Comrs., 6 Neb., 474; People v. Woodford, 11 Ill., 478; State v. Swift, 69 Ind., 505; State v. Brassfield, 67 Mo., 331; State v. Welkenmeirer, 35 Mo., 103; State v. Mayor, 73 Mo., 435; Orr v. Lawrence, 75 Mo., 246; Bayard v. Klinge, 16 Minn., 249; Taylor v. Taylor, opinion of Berry, J., 10 Minn., 81; Duke v. Brown, 1 S. E. R., 873; Markham v. Durham School, 2 S. E. R., 40; State Middlesex Co. v. School Dist., 9 Cent. R., 38; Chestnutwood v. Hood, 68 Ill., 132.

13.    (1)   The school tax levied by appellee, if valid, is a municipal tax for a municipal purpose.

(2)   The levy of this school tax is illegal, because levied in excess of and beyond the limit of taxation fixed by appellee's charter.

(3)   Statutes of a general nature do not repeal by implication; *a fortiori* a general statute for the incorporation of cities and towns of a cer-

tain class does not repeal by implication charters and special laws passed for the benefit of particular municipalities.

(4)   Appellee's charter, in so far as it limits appellee's taxing power to 1½ per cent per annum, is not amended, enlarged, or in any way affected by the statute under which appellee levied the tax in question, so as to authorize appellee to levy said school tax in addition to and beyond said charter limit.

(5)   The charter limit to appellee's taxing power for its municipal purposes can not be enlarged except by a special law amending the charter.

Act of March 23, 1887, Gen. Laws 20th Leg., p. 37; Dwyer v. Hackworth, 57 Texas, 245; Waxahachie v. Brown, 67 Texas, 519; Book v. Earle, 3 West. R., 244; People v. May, 10 Pac. R., 641; Charter of City of Galveston, sec. 79; Gary v. City of Galveston, 42 Texas, 627; Gould v. City of Paris, 68 Texas, 511; Craddock v. State, 18 Ct. of App., 567; Dillon on Mun. Corp., sec. 87; Cooley on Tax, 294; Burroughs on Tax, 375-6; Sedgwick on Stat. Law, 97; 2 Desty on Tax, 1092; Burroughs on Pub. Securities, 544; State v. Mayor, 23 La. An., 358; Weber v. Traubel, 95 Ill., 427; Town of Sparland v. Barns, 98 Ill., 595; Clark v. Davenport, 14 Iowa, 494; Iowa Land Co. v. Sac Co., 39 Iowa, 124; U. S. v. Burlington, Circ. Ct. U. S., 2 Am. L. Reg., 394; Supervisors of Carroll Co. v. U. S., 18 Wall., 71; City of Cumberland v. Magruder, 34 Md., 381; Vance v. City of Little Rock, 30 Ark., 435; Rounds v. Waymert Borough, 81 Pa. St., 395; Sheridan v. Stevenson, 44 N. J. (L.), 371; Potwin v. Johnson, 108 Ill., 70; Cumming v. Fitch, 40 Ohio St., 56; Coms. of Osborne Co. v. Blake, 25 Kansas, 356; Sterling School, etc., v. Harvey, 45 Iowa, 466; B. & M. R. Co. v. York Co., 7 Neb., 487; U. P. R. Co. v. Dawson Co., 12 Neb., 254; Burlington, etc., R. Co. v. Clay Co., 13 Neb., 367.

*Geo. P. Finlay,* for appellee.—Every legal question involved in this suit has had a judicial, legislative, and executive construction and interpretation, and the question of the power of municipal corporations (since the passage of the Act of March 26, 1881) to colllect a tax for the purpose of supporting public free schools, when they have assumed control of such schools in accordance with the provisions of the statute regulating that matter (as stated by Justice Stayton in Perry v. Rockdale, 62 Texas, 453), was fully considered in the case of Fort Worth v. Davis, 57 Texas, 225, and Dwyer v. Hackworth, 57 Texas, 245; and it was there held that such power existed when the provisions of the statute were complied with, and we regard these cases as decisive of the question.

As the whole school system of the State as applied to municipal corporations has been modeled in accordance with the decisions of the court

in the cases hereinbefore cited, it does appear that the doctrine of *stare decisis* should be rigidly applied as to the questions involved in this case.

GAINES, ASSOCIATE JUSTICE.—This suit was brought by appellants to restrain appellees, John A. McCormick, tax collector of the city of Galveston, and the city itself, from proceeding to collect certain taxes assessed on behalf of the city for the support of its public schools.   Exceptions to the petition were sustained, and appellants declining to amend, their suit was dismissed and they have prosecuted an appeal to this court.

The second assignment (which is the first presented in the brief) calls in question the validity of the elections held in the city on the 13th of June, 1881, and the 6th of September of the same year, by which the city assumed control of its public schools and authorized the levy of a tax for their support.   The petition sets forth a history of the legislation of the State contained in the Constitution and statutes authorizing cities and towns by a vote to assume control of the public schools within their limits, and alleges that at the election held September 6th, 1881, only 560 votes were cast in favor of the proposition to confer authority to levy the tax, to 243 votes against it; and that although the number of votes in the affirmative were two-thirds of the whole number of votes actually cast, it was not two-thirds of the tax payers who were qualified voters in the city.

It is contended that the Act of April 3, 1879, which authorized cities and towns by a majority vote of their qualified electors to take control of the public schools within their respective limits, is unconstitutional, because it is an abdication by the Legislature of its legislative functions in favor of the voters of the respective municipalities.   It is a well settled principle that the Legislature can not delegate its authority to make laws by submitting the question of their enactment to a popular vote; and in The State v. Swisher, 17 Texas, 441, this court held an act of the Legislature which authorized the counties of the State to determine by popular vote whether liquor should be sold in their respective limits to be unconstitutional.   But it does not follow from this that the Legislature has no authority to confer a power upon a municipal corporation and to authorize its acceptance or rejection by the municipality according to the will of the voters as expressed at the ballot box.   Mr. Dillon says:   "It is well established that a provision in a municipal charter that it shall not take effect unless assented to or accepted by a majority of the inhabitants is in no just sense a delegation of legislative power, but merely a question as to the acceptance or rejection of a charter."   1 Dillon on Mun. Corp., §44, and cases cited.   See especially Alcorn v. Homer, 38 Miss., 652.   That such legislation is not unconstitutional is expressly decided by this court in the case of Graham v. City of Greenville, 67 Texas, 62.   The act under consideration merely leaves each town or city

in the State to determine by a vote whether it will exercise the power of controlling its public schools as a separate school district or not, and is in our opinion clearly constitutional.

It is further claimed that the act is inoperative as to all cities having over 10,000 inhabitants, because of section 5 of article 11 of the Constitution, which provides that such cities "may have their charters granted or amended by special act of the Legislature." But we think that it was not intended by this section to prohibit the Legislature from providing for the incorporation of such cities by general law, but to confer authority to grant special charters. We can not presume that the framers of the Constitution meant to prohibit the law making power from passing a general act in reference to a special matter which should apply alike to every municipal corporation in the State. No reason is seen for imposing any such restriction, and the prohibition will not therefore be implied.

But it is contended that the Act of April 3, 1879, in so far as it applies to the city of Galveston, is in conflict with section 36 of article 3 of the Constitution, which reads as follows: "No law shall be revived or amended by reference to its title; but in such case the act revived or section or sections amended shall be re-enacted and published at length." This provision is wholly inapplicable to the law in question. It amends no section of the charter of the city, but merely adds to the powers already granted to the cities and towns of the State an authority not previously conferred.

It is also submitted that the Act of March 26, 1881, is in conflict with the Constitution, because it embraces a subject not expressed in its title. We do not think the objection to the act well taken. The title reads as follows: "An Act to amend chapters 5 and 11 of title 17 of the Revised Civil Statutes of the State, relating to charters of cities and towns and towns and villages, so as to authorize the levy of a tax for the support of public free schools under certain circumstances."

The contention seems to be that title 17 of the Revised Statute relates solely to towns and to cities of ten thousand inhabitants or less, and that there is nothing in the language quoted to indicate that the act was intended to apply to cities having special charters. If it were true that title 17 applies only to cities and towns incorporated under the general laws, then the objection to the statute under consideration in so far as it is sought to make it applicable to cities having more than ten thousand people would probably be fatal. But such is not the case. It is true that title 17 relates mainly to cities and towns which had been and which were to be incorporated under the general laws. It is in most of its provisions but a re-enactment of the former statutes upon the same subject. It provides the method by which these municipalities may be created, or by which those previously incorporated by special charters may accept its

provisions, and it defines their mode of organization and the powers and duties of their officers and governing bodies.

But the title reads: "Title XVII. Cities and Towns." It contains one provision at least applicable by its express terms only to cities having over ten thousand inhabitants (art. 426). This is copied from section 5, article 11, of the Constitution, but it shows clearly that such cities were in the purview of that title of the Revised Statutes. This also appears by article 505, which reads, "The incorporated cities in this State are hereby authorized to establish free libraries in such city," etc., and clearly embraces all cities. The title of the Act of March 26, 1881, distinctly points out the purpose of the law, and it follows from what we have said that in our opinion the law itself was not only legally but appropriately incorporated in title 17 of the Revised Statutes as a proper addition to the provisions already contained therein, and is to be construed as applying alike to all the cities and towns in the State.

It is further contended that the Act of March 26, 1881, is unconstitutional, because it provides that the tax shall be levied if two-thirds of the tax payers voting shall vote in favor thereof, while the Constitution ordains that the tax may be levied "if  *  *  *  two-thirds of the tax payers of such city or town shall vote for such tax."

In Fort Worth v. Davis, 57 Texas, 225, and Dwyer v. Hackworth, Id., 245, this precise question came before this court, and the law was held constitutional. These decisions have been acted on and have been acquiesced in for nearly six years; and during this time a majority, perhaps, of the cities in the State have accepted the provisions of the law and have established an efficient system of public instruction under it.

In Perry v. Rockdale, 62 Texas, 451, the doctrine was reaffirmed. The court who rendered those decisions could not say the act was clearly unconstitutional, nor can we so declare. Sustained as it is by those decisions, and important interests having been created under it, we must uphold its constitutionality, and declare it valid.

Following those decisions we must also hold that the city council having canvassed the vote and declared the result, its action is now conclusive and can not be collaterally attacked in a proceeding of this character.

The petition in this case showed that the city, before the levy of the tax in question, had already made levies to the limit of taxation authorized by its charter, which is one and a half per cent of its taxable property. The Legislature had the power to authorize it to levy to the extent of two and a half per cent. The question therefore is, Was it the intention in passing the act to confer authority to levy the tax therein provided in addition to that already authorized? We think this question must be answered in the affirmative. There is nothing in the language of the statute which indicates that it was intended merely to authorize the appropriation of taxes, which these municipalities already had power

to levy, and therefore the purpose would seem to have been to provide for an additional levy. We think, therefore, that the law empowered the city council to levy the special tax voted for school purposes in addition to the amount authorized by the city charter.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion March 20, 1888.

### ON MOTION FOR REHEARING.

*L. E. Trezevant* in a motion for rehearing reviewed the opinion and urged:

It is submitted that the statutes under and by authority of which said tax is levied and sought to be collected and the proceedings thereunder are repugnant to the bill of rights and the fourteenth amendment to the Constitution of the United States, upon the following grounds, to-wit:

To tax one man's property to educate another man's child is to take one man's property and give it to another, which is against common right and is excepted out of the powers of government by the bill of rights and the fourteenth amendment of the Federal Constitution.

Such an exercise of power is permissible only when it is granted by the people, and only as it may be granted; nor is it to be supposed that a power which is an abridgment of common right would be conferred without limitation.

It is an elementary principle of law that where power is granted the power is to be exercised subject to the conditions and within the limitations that accompany the grant.

In the case at bar the conditions under which the power granted is to be exercised and the limitations annexed to the grant are well defined and clearly set forth in section 10, article 11, of the Constitution of this State.

Since all proceedings done under a statute by which the life, the liberty, or the property of the citizen may be taken must, to be valid, be done in conformity with the statute, so where a power is granted to a Legislature by the exercise of which the property of the citizen may be taken, the exercise of this power to be valid must be in conformity with the terms of the grant, and if not in conformity with the terms of the grant and the property of the citizen is taken, such a taking is not the due course of the law of the land.

The record shows that the statutes in question and the proceedings complained of by appellants are not in conformity with the terms and limitations prescribed by the Constitution, and that the city of Galveston as a municipal corporation is not within the terms or intendment of section 10, article 11, of the Constitution of this State.

It is submitted that the levy of the tax in question and the process for its collection are unauthorized by the law of the land and is within the prohibition of the fourteenth amendment of the Federal Constitution, and that the court erred in holding said tax to be legal.

The motion for rehearing was transferred to the Austin Term.

GAINES, ASSOCIATE JUSTICE, overruling the motion.—Having carefully considered the motion for a rehearing in this case, we are of opinion that it should be overruled. The grounds upon which we maintain the validity under our State Constitution of the laws called in question by this appeal are stated in the opinion already delivered, and we think any further discussion of the same questions unprofitable.

It is, however, submitted in this motion that the laws authorizing the tax complained of are contrary to that clause of the fourteenth amendment of the Constitution of the United States which provides that no State "shall deprive any person of life, liberty, or property without due process of law." We have endeavored to show in the former opinion that the tax was levied in accordance with the Constitution and laws of this State. If we are correct, it follows that the collection of the tax was in due course of law, unless it should be broadly held that taxation for the purpose of maintaining free schools is not within the powers of a State government. But we know of no authority which holds this. On the contrary, so far as we are aware, the power of the State to maintain schools at the public expense, though rarely questioned in the courts, has been uniformly upheld. Commissioners v. Hartman, 17 Penn. St., 118; Stuart v. School District, 30 Mich., 69; Richards v. Raymond, 92 Ill., 612; Briggs v. Johnson Co., 4 Dill., 148. Taking property under the taxing power is due process of law. High v. Shoemaker, 22 Cal., 363; Davidson v. New Orleans, 96 U. S., 97.

The rehearing is refused.

*Rehearing refused.*

Opinion May 29, 1888.