## GREEN et al. v. CITY OF AMARILLO.*
(No. 2001.)

(Court of Civil Appeals of Texas. Amarillo. June 21, 1922. Rehearing Denied Oct. 11, 1922.)

1. **Municipal corporations** ⊜⇒724 — **May be granted immunity from liability for damages for acts done in governmental capacity.**

A city may be granted the same immunity against claims for damages for its acts done in its governmental capacity as is enjoyed by the general government in such matters.

2. **Municipal corporations** ⊜⇒725—**Not exempt from liability for acts done in private capacity, in absence of special exemption.**

For acts done in the exercise of powers not strictly governmental, but voluntarily assumed and exercised for the private advantage and benefit of the locality and its inhabitants, the city, in the absence of some special exemption, is liable to the same extent as any private person or corporation performing the same acts.

3. **Constitutional law** ⊜⇒60—**Legislature cannot delegate legislative power.**

Generally, the Legislature cannot delegate the power of making laws to the people or any other body.

4. **Municipal corporations** ⊜⇒745½ — **City in operation of street railroad acts in private capacity, and is liable for negligence of employés.**

A city, in the operation of a street railway system, acts in its private and corporate capacity, as distinguished from its governmental capacity, and is liable for negligence of its employés in the operation of a car.

5. **Constitutional law** ⊜⇒63(2) — **Legislature cannot authorize city to exempt itself from liability for injuries sustained in operation of street railroads.**

Under Const. art. 1, §§ 3, 13, a city with a charter adopted under Const. art. 11, § 5, and Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i, operating a street railroad under article 1096d, empowering a city to operate a street railroad and to provide for the exemption from liability for damages, was not empowered to exempt itself from liability for damages caused by negligence in operation of railroad, since the Legislature was not empowered to delegate to the city the power to exempt itself from liability for injuries caused by negligence in operation of street railroad.

6. **Constitutional law** ⊜⇒63(2)—**Power of legislation, which Legislature may by implication confer on municipality, confined to matters of local self-government and police regulations.**

The power of legislation, which the Legislature may by implication confer on a municipality, is confined to matters of local self-government and police regulations.

On Motion for Rehearing.

**7. Municipal corporations ⧉⇒56—Charter conferring on city council legislative power as to matters not of purely local concern unconstitutional.**

Const. art. 11, § 5, empowering cities with certain population to adopt and amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under such charter shall contain any provision inconsistent with the Constitution or general laws of the state, did not empower the city to adopt a charter which would attempt to confer upon a city council the power to legislate in respect to matters not of purely local concern.

Appeal from District Court, Potter County; W. R. Ewing, Judge.

Suit by Ida M. Green and another against the City of Amarillo. Judgment sustaining a general exception to plaintiffs' petition, and plaintiffs appeal. Reversed and remanded.

Stone, Miller & Guleke, of Amarillo, for appellants.

C. E. Gustavus, of Amarillo, for appellee.

BOYCE, J. Ida M. Green, joined by her husband, brought this suit against the city of Amarillo, to recover damages for personal injuries sustained by her in a collision with a street car operated by the city. The trial court sustained a general exception to plaintiff's petition. The petition alleges that the city operated the street railway under the provisions of its charter, and without question sufficiently alleges negligence on the part of the operatives of the street car, and that plaintiff sustained damages as a result thereof. The exception was sustained on the ground that, under the provisions of its charter and ordinances, the city was exempt from liability for damages caused by the negligence of its employees in the operation of the street railway.

It appears that the city of Amarillo adopted its charter under the authority of article 11, § 5, of the state Constitution and articles 1096a to 1096i, Vernon's Sayles' Civil Statutes. Article 11, § 5, of the Constitution grants authority to cities having more than 5,000 inhabitants to adopt and amend their charters, "subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state." Article 1096d, Vernon's Sayles' Civil Statutes, conferred upon any city accepting a charter under such law the power to own and operate, "within or without the city limits * * *

a system * * * of * * * street railways," etc., and in another paragraph of the same article "to provide for the exemption from liability on account of any claim for damages to any person or property, or to fix such rules and regulations governing the city's liability as may be deemed advisable." Section 8 of the city charter reads as follows:

"Said city shall have the power to provide for the exemption of said city from liability on account of any claim for damages to any person or property or to fix such rules and regulations governing the city's liability as may be deemed advisable."

The following ordinance of the city is quoted in the judgment of the court as furnishing exemption from liability in this suit:

"Hereafter the city of Amarillo shall be and is hereby declared exempt from any and all liability and damages for injury or injuries to persons or property caused by or arising from the filling, raising, grading, elevating or improving any property within the city, or caused by or arising from the construction, maintenance or operation of any public utility plant or system, or caused by or arising from the maintenance, operation or extension of its sewerage system, or caused by or arising from any obstruction, unevenness, depression, excavation of any public place in this city, and from any and all liability of any other character of injury to persons or property howsoever the same is caused or produced."

[1, 2] The modern city performs functions of a dual nature. Primarily it is a governmental agency, clothed with limited powers of sovereignty, exercised for "purposes essentially public, purposes pertaining to the administration of general laws made to enforce the general policy of the state." The city may be granted the same immunity against claim for damages for its acts done in its governmental capacity as is enjoyed by the general government in such matters. Other acts of the city are done in the exercise of powers not strictly governmental, but "voluntarily assumed and exercised for the private advantage and benefit of the locality and its inhabitants." For its acts done in this latter capacity, the city, in the absence of some special exemption, is liable to the same extent as any private person or corporation performing the same acts. City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426.

[3] The city, in the operation of a street railway system, was unquestionably acting in its private and corporate capacity, as distinguished from its acts of governmental character, and without the exemption claimed under its charter and ordinances would have been liable to the plaintiff for damages sustained as a result of the negli-

---

⧉⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

gence of its employees in the operation of the car at the time of plaintiff's injury. Dillon on Municipal Corporations (5th Ed.) §§ 1303 and 1670; Henry v. City of Lincoln, 93 Neb. 331, 140 N. W. 665, 50 L. R. A. (N. S.) 174; Barron v. City of Detroit, 94 Mich. 601, 54 N. W. 273, 19 L. R. A. 452, 34 Am. St. Rep. 366. A decision of the case will depend, therefore, on the answer to either one of two general questions: (1) Whether the Legislature itself would have the power under the Constitution to enact legislation providing such special exemption to the city from liability for damages of this character. (2) Conceding that the Legislature has such authority, whether it may delegate the power to the city to provide for such exemption by its ordinances.

A decision of the first question suggested would involve a consideration of several provisions of the Constitution and their relation to the facts of this case. The most pertinent of these would perhaps be those contained in section 3, art. 1, and section 13, art. 1, of the state Constitution. We know of no authority directly in point here. The case of Williams v. City of Galveston, 41 Tex. Civ. App. 63, 90 S. W. 505, may be distinguished. In that case the court upheld the validity of a provision of the city charter of Galveston which exempted the city from liability for damages caused by defects in the streets of the city. But maintenance of the public streets is held to belong to the governmental function of the municipality, and the decision in that case was based on the proposition that the state might confer on the city the same exemption that it itself would enjoy in the maintenance of the public roads of the state. See, also, White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426. The decisions of other courts which we have examined, approaching nearest the facts of this case, are Mattson v. Astoria, 39 Or. 577, 65 Pac. 1066, 87 Am. St. Rep. 687, and Batdorff v. Oregon City, 53 Or. 402, 100 Pac. 937, 18 Ann. Cas. 287. We have not undertaken to consider this phase of the question exhaustively, and do not announce a conclusion thereon, but dispose of the case on our decision as to the second question.

[4-6] The legislative power of the state is by the Constitution vested in the Legislature. The people have the right under the Constitution, to have the judgment and action of their chosen representatives in the enactment of laws which are of general public concern, and the Legislature as a general rule cannot delegate the power of making laws to the people or any other body. Smith v. Swisher, 17 Tex. 441; Ex parte Mitchell, 109 Tex. 11, 177 S. W. 953; Blessing v. City of Galveston, 42 Tex. 641, 659; Stoutenburgh v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637; Cooley's Constitutional Limitations, pp. 264, 265. Of course, this rule would be modified by express exceptions contained in the Constitution itself. It has also been held that the constitutional power to create municipalities with the power of local self-government carries with it the right to delegate to such municipalities authority to enact local laws and regulations incident to the exercise of such local governmental functions. There is no express authority in the Constitution for municipal legislation of the character we are considering. The power of legislation which the Legislature may by implication confer on a municipality is confined to matters of local self-government and police regulations. In re Municipal Suffrage to Women, 160 Mass. 586, 36 N. E. 488, 23 L. R. A. 113; Bradshaw v. Lankford, 73 Md. 428, 21 Atl. 66, 11 L. R. A. 582, 25 Am. St. Rep. 602; Stanton v. Board of Supervisors, 191 N. Y. 428, 84 N. E. 380; 12 C. J. p. 860; 6 R. C. L. p. 168. Now, a law the effect of which would be to exempt the city from liability for damages resulting from its operation of a street railway on the public streets of a city is not a police regulation, or a law of local self-government, and is not a matter of purely local concern. It may operate for the benefit only of the city and its taxpayers; but the streets of the city are public highways, and are used, not only by the citizens of the city, but by the public generally, and such law affects the public at large. Cities incorporated under the "home rule amendment" are given the power, under the terms of article 1096d, R. C. S.:

"To buy, own, construct within or without the city limits and to maintain and operate a system or systems, of gas, or electric lighting plants, telephones, street railways, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharves, ferries, ferry landings, loading and unloading devices and shipping facilities, or any other public service or public utility, and to demand and receive compensation for service furnished for private purposes or otherwise," etc.

It is obvious that many of the activities of a municipality, engaged in operating the public utilities mentioned in this article of the statute, do not pertain to the governmental functions of the city, and necessarily many of these activities may become a matter of general public concern. It probably did not occur to the Legislature that the general authority to provide for exemption against liability for damages would be invoked to sustain local legislation providing immunity from damages resulting from the acts of the city while engaged in its own private business; and it may possibly be that the statute should be construed as furnishing no authority for such character of legislation. Henry v. City of Lincoln, 93 Neb. 331, 140 N. W. 664, 50 L. R. A. (N. S.) 174. At any rate, we think the city is with-

out constitutional authority to legislate for itself such immunity. It is clear that the legislation claimed to furnish the basis of the exemption in this case is that of the city, and not the Legislature. The Legislature has not attempted to make a law, and merely provide for its going into effect upon assent by the municipality. The Legislature here merely sought to grant to the cities power which they might accept or reject. This it could do as to some matters. Spears v. City of San Antonio, 110 Tex. 618, 223 S. W. 166; Werner v. City of Galveston, 72 Tex. 22, 7 S. W. 726, 12 S. W. 159; Johnson v. Martin, 75 Tex. 33, 12 S. W. 323. But the power here given is to exercise a discretion in the framing of the laws or regulation of exemption. This would undoubtedly be legislation, and, as we have seen, the Legislature is without power to confer on the cities authority to adopt legislation, not of the character we have stated. Our specific holding is that the ordinance, in so far as it is sought to be applied to the case under consideration, is ineffective.

Since we have concluded that in any event the court was in error in sustaining the exception to the petition, we have not considered the question as to whether the court had the right, in passing on the demurrer, to take judicial cognizance of the ordinance not pleaded by the plaintiff.

Reversed and remanded.

### On Motion for Rehearing.

[7] In the motion for rehearing it is vigorously contended that we did not give due consideration to the changes effected in the law by the adoption of the amendment to the Constitution as contained in the present provisions of article 11, § 5, thereof. We did consider this provision of the Constitution. While it is true that it confers broad powers on the inhabitants of the cities therein named in the matter of the adoption of charters for their government, it contains a limitation which, in our opinion, is fatal to appellee's claim in this case. We quoted this proviso in our original opinion, and repeat it:

"Providing that no charter, or any ordinance passed under said charter, shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state."

Since the Constitution vests the legislative power of the state in the Legislature, any charter which would attempt to confer upon a city council the power of legislation in respect to matters that are not of purely local concern would, in our opinion, be inconsistent with the Constitution, and necessarily an ordinance passed by the city authorities, and not of such character, would

be ineffective. Our original opinion was devoted to an elaboration of the foregoing general propositions, and we do not think it necessary to discuss them further.